11-2209.121-RSK                                          November 29, 2012

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MARIAN BAGINSKI,                    )
                                    )
                Plaintiff,          )
                                    )
                v.                  )      No. 11 C 6999
                                    )
JP MORGAN CHASE BANK N.A.,          )
                                    )
                Defendant.          )


### MEMORANDUM OPINION

Before the court is defendant JP Morgan Chase Bank, N.A.'s ("Chase") motion to dismiss plaintiff Marian Baginski's amended complaint. For the reasons explained below, we grant Chase's motion in part and deny it in part.

### BACKGROUND

Plaintiff Marian Baginski's pro se complaint alleges that Chase required him to make excessive escrow payments and then breached its agreement to grant him a permanent loan modification. Baginski obtained a home loan from Washington Mutual Bank ("WaMu") in 2006. (Am. Compl. ¶ 1.) Chase acquired the loan when it purchased WaMu's assets on September 25, 2008. (Id. at ¶ 8.) The parties' dispute began in December 2009 when Chase sent Baginski a letter informing him that he would have to begin making escrow-account payments for insurance and tax purposes. (Id. at ¶ 24; see also id. at ¶ 1.) WaMu had not required Baginski to maintain an

escrow account, and the escrow payments that Chase demanded significantly exceeded Baginski's yearly payments for taxes and insurance. (See id. at ¶ 1; see also Letter from Baginski to Chase, dated February 2, 2011, attached as Ex. 2 to Chase's Mem.) Baginski's pro se complaint is difficult to parse, but we gather that he continued to make monthly mortgage payments to Chase in the amounts he had paid before Chase instituted the escrow requirement. (See Letter from Baginski to Chase, dated February 2, 2011 ("Chase Bank started to send me monthly payments $3,4,5, thosends [sic] for one month, but I paid usual monthly payments in sum of $1164.01."); see also Am. Compl. ¶ 2.) Chase later accused Baginski of failing to make payments between June 2010 and October 2010. (Am. Compl. ¶ 2.) Baginski alleges that he did make payments, at least in the pre-escrow-requirement amounts. (See id. ("Marian Baginski paid monthly installments each month before due date and his obligations for real estate taxes and insurance.").) On October 18, 2010, Chase threatened to foreclose Baginski's home if he failed to pay the loan in full, with penalties. (Id.)

In late 2010, Baginski sought a loan modification. (Id. at ¶ 35.) Before discussing Baginski's allegations, a brief overview of the Home Affordable Mortgage Program ("HAMP") will be helpful. "The U.S. Department of the Treasury implemented HAMP to help homeowners avoid foreclosure amidst the sharp decline in the nation's housing market in 2008." Wigod v. Wells Fargo Bank, N.A.,

- 3 -

673 F.3d 547, 554 (7th Cir. 2012). In connection with this legislation, the Secretary of the Treasury "negotiated Servicer Participation Agreements (SPAs) with dozens of home loan servicers . . . . Under the terms of the SPAs, servicers agreed to identify homeowners who were in default or would likely soon be in default on their mortgage payments, and to modify the loans of those eligible under the program." Id. at 556. Servicers determine a homeowner's eligibility by following a "three-step process:" (1) the servicer determines whether the borrower meets certain threshold requirements for modification under HAMP (e.g., the loan must have originated before January 1, 2009); (2) the servicer calculates a modification using criteria imposed by Treasury Department regulations; and (3) the servicer applies a Net Present Value (NPV) test "to assess whether the modified mortgage's value to the servicer would be greater than the return on the mortgage if unmodified." Id. at 556-57. If "the value of the modified mortgage would be lower than the servicer's expected return after foreclosure," then the servicer is not required to offer a modification. Id. at 557. If the value of the modified loan exceeds the projected return after a foreclosure, then the servicer must offer a modification. Id. After determining that a borrower is eligible, the servicer implements "a Trial Period Plan (TPP) under the new loan repayment terms . . . ." Id. If the borrower

- 4 -

complies with the terms of the TPP, then the servicer must offer a permanent modification.  Id.

Baginski alleges that he and Chase entered into some form of agreement concerning a loan modification:

> Plaintiff[] entered into an oral MAKING HOME AFFORDABLE (MHA) contract with JPMorgan regarding the loan serviced by [sic] JPMorgan made an oral and written commitment offer to Plaintiff on or about December 01.2010. Plaintiff formed a binding, enforceable agreement with JPMorgan when he delivered all the documents requested by the Defendant.

(Id. at ¶ 35.)  However, the nature of the parties' alleged agreement is unclear.  Some of the complaint's allegations indicate that the parties entered into a TPP agreement, (see id. at ¶¶ 36, 47), and that Chase breached that agreement by failing to grant Baginski a permanent loan modification.  (Id. at ¶ 37.)  Other allegations suggest that Baginski's loan-modification request never made it past the eligibility-determination stage.  (See, e.g., id. at ¶¶ 52(e) (Chase failed "to respond, or respond in a timely manner, to [Baginski's] request to be evaluated for a modification under HAMP, even after [he] provided all information requested by JP Morgan"); 52(g) (Chase failed "to properly determine whether [Baginski] qualified for HAMP modifications by checking investor restrictions and/or performing an NPV test"); 52(n) (Chase told Baginski "that [he] qualified for a trial period plan, then fail[ed] to send an official trial plan agreement.").  Part of the confusion stems from the fact that Baginski appears to have

incorporated HAMP allegations from another case that may or may not be relevant to his particular claim. (See, e.g., id. at ¶ 52(d) (one of several allegations referring to "Plaintiffs," plural).)

Baginski also alleges that Chase did not provide substantive responses to his inquiries concerning the status of his loan. On February 2, 2011, Baginski sent what he identified as a "qualified written request" ("QWR") to Chase stating his belief that his "loan account was in error." (Id. at ¶ 25); see also Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e). "RESPA is a consumer protection statute that regulates the real estate settlement process, including servicing of loans and assignment of those loans." Catalan v. GMAC Mortg. Corp., 629 F.3d 676, 680 (7th Cir. 2011). Among other requirements, RESPA requires loan servicers to "respond promptly to borrowers' written requests for information." Id. Baginski received a response from Chase acknowledging his February 2, 2011 letter on February 23, 2011, (see Am. Compl. ¶ 25), and he received a second letter from Chase on March 20, 2011. (See id. at ¶ 29.) But he contends that neither response adequately addressed the issues he raised in his letter. (See id. at ¶ 73; see also 12 U.S.C. § 2605(e) (2) (requiring servicers to investigate a borrower's complaint and make corrections to the borrower's account, or else explain why it believes that corrections are not warranted). Baginski alleges that he sent a second QWR to Chase on February 14, 2011. (Id. at

- 6 -

¶ 69.) However, he does not describe the substance of this second letter,[1] and he alleges that Chase acknowledged receiving the letter on a nonsensical date (January 6, 2010). (See id. ¶¶ 69, 72.)[2]

## DISCUSSION

Baginski's five-count complaint asserts claims for breach of contract (Count I), breach of the covenant of good faith and fair dealing (Count II), "deceit and/or negligent misrepresentation" (Count III), negligence (Count IV), RESPA violations (Count V), and mail fraud (Count VI). Chase has moved to dismiss the complaint in its entirety.

## A. Legal Standard

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the

---

[1] At paragraph 26 of his complaint, Baginski alleges that he sent a "DODD-FRANK CERTIFICATION" to Chase on February 14, 2011. (Am. Compl. ¶ 26.) This allegation refers to Baginski's obligation to certify that he has not been convicted of any real-estate related crimes in order to be eligible for relief under the Making Home Affordable Program. See 12 U.S.C. § 5220b(d) (individuals convicted of real-estate related crimes within the last 10 years are ineligible to receive assistance under the Making Home Affordable Program); U.S. Dep't of the Treasury, Home Affordable Modification Program Supp. Directive 10-11 (Sept. 21, 2010) (imposing the certification requirement). If Baginski's Dodd-Frank certification is the letter that he refers to at paragraph 69 of his complaint, then it is not a QWR under RESPA. See 12 U.S.C. § 2605(e)(1)(B) (a QWR "(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower").

[2] Baginski's complaint refers to other letters, (see Am. Compl. ¶¶ 28, 31, 70), but as far as we can tell he has not based his RESPA claim on Chase's response (or lack thereof) to these letters. (See id. at ¶ 69 (alleging that Baginski sent two QWRs to Chase, dated February 2 and February 14, respectively).)

merits. 5B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356, at 354 (3d ed. 2004). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 556 (2007)). When evaluating a motion to dismiss a complaint, the court must accept as true all factual allegations in the complaint. <u>Iqbal</u>, 129 S. Ct. at 1949. However, we need not accept as true its legal conclusions; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 555).

The court has a special responsibility to construe a <u>pro se</u> complaint liberally and to "take appropriate measures to permit the adjudication of <u>pro se</u> claims on the merits, rather than to order their dismissal on technical grounds." <u>Donald v. Cook County Sheriff's Dep't</u>, 95 F.3d 548, 555 (7th Cir. 1996); <u>see also Castillo v. Cook County Mail Room Dep't</u>, 990 F.2d 304, 307 (7th Cir. 1993) (stating that a <u>pro se</u> complaint, "however inartfully pleaded," should be liberally construed). Accordingly, when reviewing a <u>pro se</u> complaint, the court must employ standards less

- 8 -

stringent than if the complaint had been drafted by counsel. <u>Antonelli v. Sheahan</u>, 81 F.3d 1422, 1427 (7th Cir. 1996); <u>Curtis v. Bembenek</u>, 48 F.3d 281, 283 (7th Cir. 1995) (both citing <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972)).

**B.    Breach of Contract (Count I)**

Baginski has articulated two theories in support of his breach-of-contract claim, one of which we can quickly dispense with.  Baginski asserts in his complaint that he is a third-party beneficiary of the SPA between Chase and Fannie Mae.  (See Am. Compl. ¶¶ 40-46, 48.)  In <u>Wigod</u>, our Court of Appeals clearly stated (albeit in dicta) that borrowers cannot sue for breach of an SPA because Congress did not create a private right of action under HAMP.  See <u>Wigod</u>, 673 F.3d at 559 n.4 ("Congress did not create a private right of action to enforce the HAMP guidelines, and since [<u>Astra USA, Inc. v. Santa Clara County</u>, 131 S.Ct. 1342 (2011)] district courts have correctly applied the Court's decision to foreclose claims by homeowners seeking HAMP modifications as third-party beneficiaries of SPAs.").  Applying <u>Wigod</u>, Baginski's third-party-beneficiary theory is not viable.

Baginski's second theory is that he entered into a TPP contract with Chase, which the bank breached by failing to permanently modify his loan.  (See Am. Compl. ¶ 37.)  In <u>Wigod</u>, our Court of Appeals held that a borrower could sue for breach of a TPP contract under state law, notwithstanding the absence of a private right of action under HAMP.  See <u>Wigod</u>, 673 F.3d at 560-66.  The

fact that the plaintiff's TPP agreement incorporated HAMP's requirements was no impediment to her suit. See id. at 581-85 (rejecting the theory that a claim for breach of a TPP agreement is an impermissible end run around HAMP). Applying these principles, the Court concluded that the plaintiff had stated a claim for breach of contract based upon her allegation that the defendant had failed to offer her a permanent loan modification even though she had complied with all TPP conditions. See id. at 561-66. Some of Baginski's allegations indicate that he is pursuing a claim along the lines suggested by Wigod. (See Am. Compl. ¶¶ 36, 47.) But as we discussed before, the complaint also contains allegations suggesting that the parties never executed a TPP agreement. (See id. at ¶ 52.) Chase construes the complaint to allege that Baginski merely submitted a *request* for a loan modification, one that Chase did not approve. (See Chase's Mem. at 5.) We tend to agree with Chase that Wigod is distinguishable if Chase and Baginski never entered into a TPP agreement. But see Wigod, 673 F.3d at 566 (concluding that the plaintiff had adequately pled a claim for promissory estoppel in the alternative to her claim for breach of contract). But given Baginski's pro se status, we will construe the ambiguities in his complaint in his favor.[3] The complaint alleges that the parties entered into a TPP contract and

---

[3/]   This is a closer call because Baginski's response brief does not address Chase's interpretation of his complaint. However, because Baginski is proceeding pro se, we will not construe his silence to mean that he agrees with Chase that there was no TPP agreement.

that Chase breached that contract by failing to offer a permanent loan modification despite Baginski's compliance with the contract's requirements. (See Am. Compl. ¶¶ 35-39.) The facts may not bear out these allegations, but that is a matter for summary judgment. Chase's motion to dismiss is denied as to Count I.

## C.    The Duty of Good Faith and Fair Dealing (Count II)

Count II of Baginski's complaint alleges that Chase breached its duty of good faith and fair dealing. (See Am. Compl. ¶¶ 51-54.) The duty of good faith and fair dealing is an interpretive tool that informs the court's interpretation of the contracting parties' intent. See Playboy Enterprises Intern., Inc. v. Smartitan (Singapore) Pte Ltd., No. 10-cv-4811, 2011 WL 3839711, *2 (N.D. Ill. Aug. 26, 2011). It is not an independent cause of action. See id.; see also Zeidler v. A & W Restaurants, Inc., 301 F.3d 572, 575 (7th Cir. 2002) ("[W]e note that the district court correctly dismissed on the pleadings the [plaintiffs'] remaining claim that [the defendant] breached an independent covenant of good faith and fair dealing. The covenant is only an aid to interpretation, not a source of contractual duties or liability under Illinois law."). Count II is dismissed with prejudice.

## D.    "Deceit and/or Negligent Misrepresentation" (Count III)

Insofar as Count III alleges fraud in connection with WaMu's decision to grant Baginski a loan, (see, e.g., Am. Compl. ¶ 56, 57(b), 58), that claim is barred by the Purchase and Assumption

- 11 -

Agreement between Chase and the FDIC pursuant to which Chase acquired WaMu's assets.[4]    Section 2.5 of the Purchase and Assumption Agreement broadly excludes borrower claims from the liabilities assumed by Chase.    (<u>See</u> Purchase and Assumption Agreement, attached as Ex. 1 to Chase's Mem., § 2.5); <u>see also</u> <u>Yeomalakis v. F.D.I.C.</u>, 562 F.3d 56, 60 (1st Cir. 2009) (construing the same provision to prohibit a plaintiff from substituting Chase as a defendant in a lawsuit originally filed by a borrower against WaMu).    So, even assuming that Baginski has adequately alleged fraud by WaMu, he cannot pursue that claim against Chase.    However, Baginski also alleges that Chase "intentionally or negligently misrepresented to [him] that he was still on a trial modification plan, when in fact[,] [his] modified payments were being recorded as insufficient." (Am. Comp. ¶ 59.)  This claim, which is based on Chase's alleged misrepresentation after it acquired Baginski's loan, is not barred by § 2.5.   And Chase has not articulated any other basis to dismiss this claim.   Therefore, Chase's motion to dismiss is denied as to Count III.

**E.    Negligence (Count IV)**

Count IV of Baginski's complaint alleges that "WaMu had a duty to investigate the reasonableness of [Baginski's] stated income and

_____

[4]    We may consider the Purchase and Assumption Agreement without converting Chase's motion to dismiss into a motion for summary judgment because the complaint expressly refers to, and relies on, that document.  (<u>See</u> Am. Compl. ¶¶ 21-22); <u>see also</u> <u>Minch v. City of Chicago</u>, 486 F.3d 294, 300 n.3 (7th Cir. 2007).

[to] confirm that [he] had the ability to repay the loan." (Am. Compl. ¶ 64.) For the reasons we just discussed, this claim is barred by § 2.5 of the Purchase and Assumption Agreement. Count IV is dismissed with prejudice.

## F.   RESPA Violations (Count V)

After receiving a QWR from a borrower, a loan servicer has 20 days to send a written response acknowledging the correspondence. See 12 U.S.C. § 2605(e)(1)(A). Within 60 days after receiving a QWR, "the servicer must take one of three actions: either (1) make appropriate corrections to the borrower's account and notify the borrower in writing of the corrections; (2) investigate the borrower's account and provide the borrower with a written clarification as to why the servicer believes the borrower's account to be correct; or (3) investigate the borrower's account and either provide the requested information or provide an explanation as to why the requested information is unavailable." Catalan, 629 F.3d at 680 (citing 12 U.S.C. § 2605(e)(2)(A), (B), and (C)). During this 60-day period, "a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency." 12 U.S.C. § 2605(e)(3). Chase argues that Baginski's February 2, 2011 letter did not qualify as a QWR, therefore its obligation to respond under § 2605 was never triggered. See Catalan, 629 F.3d at 680 ("[I]t takes a 'qualified

written request' to trigger the loan servicer's duties under RESPA to acknowledge and respond."). It relies on cases from other jurisdictions that have applied a relatively strict interpretation of § 2605(e)(1)(B)'s requirements. (See Chase's Mem. at 10.) However, our Court of Appeals has interpreted the statute less restrictively. See Catalan, 629 F.3d at 686-87. As we read Baginski's letter, he was complaining about "errors" related to his account: (1) Chase required him to make escrow payments, whereas WaMu had not required him to do so; (2) the escrow payments that Chase demanded were excessive; (3) Chase failed to apply his monthly mortgage payments correctly and then contacted a credit bureau concerning the missed payments; and (4) Chase stopped accepting payments from him. (See Letter from Baginski to Chase, dated February 2, 2011.) It is true that Baginski's letter requests reinstatement rather than specific information about his account, but we think it sufficiently describes alleged "errors" to constitute a QWR. See 12 U.S.C. § 2605 (A QWR "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error **or** provides sufficient detail to the servicer regarding other information sought by the borrower.") (emphasis added).

In the alternative, Chase argues that the complaint's allegations demonstrate that it complied with RESPA. Baginski alleges that Chase acknowledged his February 2 letter on February

- 14 -

23, 2011, (see Am. Compl. ¶ 25), within the 20-day period that the statute imposes. See 12 U.S.C. § 2605(e)(1)(A) (requiring written acknowledgment within 20 days of receipt, "excluding legal public holidays, Saturdays, and Sundays"). He also alleges that he received a second letter from Chase within the 60-day period imposed by § 2605(e)(2):

> On, or about March 20.2011 Mr. Larry Thode in the name of the Defendant mentioned about loan modification process and "again to request the escrow account waiver" and about "a suspense account until enough funds are available to make the scheduled payment amount due."

(Id. at ¶ 29.) This allegation appears to indicate that Chase's letter was responsive to the subject-matter of Baginski's QWR. But Baginski alleges elsewhere in the complaint that Chase did not resolve the escrow issue, either by reducing or eliminating the escrow requirement or by explaining why it was unwilling to do so. (See id. at ¶ 73 ("Defendant JP Morgan thus violated RESPA by failing to make appropriate corrections to [Baginski's] escrow account in response to any of [his] QWRs, or to investigate or to explain why it would or could not do so."); cf. 12 U.S.C. § 2605(e)(2)(A)-(C). It may be that Chase acted within its rights by imposing the escrow requirement, and that its response to Baginski's QWR was appropriate under the circumstances. However, those issues will require more factual development. Chase's motion to dismiss is denied as to Count V.

**G.  Mail Fraud (Count VI)**

- 15 -

Baginski alleges that he contacted the Illinois Attorney General in March 2011, apparently to complain about Chase's conduct. (See Am. Compl. ¶ 3.) Then in August 2011, Chase sent a letter to the Attorney General stating that Baginski's loan was "currently in active litigation." (Id. at ¶¶ 3, 30, 33, 79.) As far as we can tell, Baginski believes that this statement was false because Chase had notified him on June 27, 2011 that the foreclosure proceedings against him had been "stopped." (Id. at ¶ 30.) Baginski claims that Chase's statement violated the criminal mail fraud statute. (See Am. Compl. ¶ 79.) First, Baginski cannot sue directly under the mail-fraud statute: this is a civil action for damages, not a criminal prosecution. Mail fraud may constitute "predicate acts of racketeering" for purposes of a civil RICO claim, Midwest Grinding Co., Inc. v. Spitz, 976 F.2d 1016, 1019 (7th Cir. 1992), but Baginski has not attempted to allege such a claim. See id. ("The elements of a RICO violation consist of (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.") (citation and internal quotation marks omitted). Second, it is unclear how Baginski believes he was injured by Chase's alleged statement to the Illinois Attorney General. He generally alleges that he "suffered actual damages, including but not limited to devastation of his credit, monetary damages, health deterioration, and threatened foreclosure of his home." (Id. at ¶ 80.) But he does not allege that, in reliance on

- 16 -

Chase's statement, the Attorney General acted (or failed to act) in a way that harmed his interests.    Count VI is dismissed with prejudice.

**<u>CONCLUSION</u>**

The defendant's motion to dismiss [28] is granted in part and denied in part.    The motion is granted as to Counts II, IV, and VI; those counts are dismissed with prejudice.    The defendant's motion is otherwise denied.    A status hearing is set for December 5, 2012 at 11:00 a.m.


DATE:         November 29, 2012



ENTER:        _____
              John F. Grady, United States District Judge